# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOYCE BURNETT, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.  03-2365  (RBW) |
| AMAR SHARMA, *et al.*, | ) | |
| Defendants. | ) | |

|  |  |  |
|---|---|---|
| JOYCE BURNETT, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.  06-0037  (RBW) |
| AMAR SHARMA, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM  OPINION

This matter is before the Court on dispositive motions filed on behalf of Amar, Anasuya, and Amit Sharma, Jennifer Jones Renton, Sharma Law Group and Loewinger & Brand, PLLC. The Court will grant the motions in part and deny them in part without prejudice.[1]

---

[1]      In addition, the Court will rule on all the parties' outstanding non-dispositive motions.

1

## I.  BACKGROUND

Plaintiff alleges that Amar Sharma owns a house at 4801 41st Street, N.W., Washington, D.C. ("the premises"), which he leased to defendant Jennifer Jones Renton.  Plaintiff's Final Amended Complaint and Jury Demand ("Final Amd. Compl.") ¶¶ 6, 8, 12.  In June 1998, plaintiff sublet a room from Ms. Renton.  *Id.* ¶ 15.

Before she sublet the room, plaintiff raised questions with Ms. Renton about noises coming from the furnace in the basement.  Final Amd. Compl. ¶ 14.  Ms. Renton told plaintiff that "it was nothing."  *Id.*  Mr. Sharma also told plaintiff that "he already had looked into [the noise in the basement] and found it not to be a problem."  *Id.* ¶ 15.  Plaintiff "began to feel ill from the beginning of the tenancy," experiencing "severe cold and flu-like symptoms and difficulty concentrating and remembering things in school."  *Id.* ¶ 18.  Periodically she "ask[ed] about conditions at the premises and requested repairs."[2]  *Id.* ¶ 23.  In February 2001, the Washington Gas Company "noted a reading of 400PPM of carbon monoxide in the air and placed a red danger tag on the furnace" after a company representative came to the house at plaintiff's request.  *Id.* ¶ 25.  According to plaintiff, "products were leaking from the flu[, and the] chimney was also blocked and had to be repaired."  *Id.*  "[T]oxins in the home exceeded all acceptable and/or legal making the home unfit for human habitation."  *Id.* ¶ 27.  Plaintiff appears to attribute her physical symptoms and current condition to her continued exposure to the carbon monoxide emitted by the furnace.  *Id.*

---

[2]        It is not clear from the pleading to whom plaintiff's inquiries were directed, although it appears they were directed to the owner, Amar Sharma.  Final Amd. Compl. ¶ 23.

According to plaintiff, sometime before February 1999 she "asked about purchasing the premises and the owner said yes."  Final Amd. Compl. ¶ 19.  She made an offer in writing after having the house inspected in February 1999 and appraised in March 1999.  *Id.* ¶ 20.  After allegedly being threatened by Ms. Renton's husband concerning events involving plaintiff's mail, Ms. Renton provided plaintiff with a "Notice to Vacate" on October 18, 1999.  *Id.* ¶ 22.  Upon receiving the notice, plaintiff contacted Mr. Sharma "to ask for the entire house."  *Id.*  Mr. Sharma "said no," advertised the premises as available to rent, and leased the house to a white couple.  *Id.*  Thereafter, Mr. Sharma initiated "several" eviction proceedings against plaintiff in the Superior Court of the District of Columbia, Landlord & Tenant Branch, and ultimately, after a jury trial, gained possession of the premises in June 2003.  *Id.* ¶ 24; Memorandum in Support of Defendants Amar, Anasuya, and Amit Sharma's Motion for Summary Judgment ("Sharma Mot."), Exhibit ("Ex.") I (Notice of issuance of writ of possession, L&T No. 51649-01).

Plaintiff brings this action under the following constitutional and statutory provisions:

> [T]he Thirteenth Amendment, the Civil Rights Act of 1866, as amended, 42 U.S.C. [§] 1981 et seq., the Fair Housing Act of 1968, as amended (FHA), 42 U.S.C. § 3601 et seq., Americans with Disabilities Act, 42 U.S.C. [§] 12101 et seq., the Civil Rights Act of 1968 § 801 et seq., federal, state statutory and common law[.]

Final Amd. Compl. ¶ 1.  She demands compensatory damages, and declaratory, injunctive, and other equitable relief.  *Id.*

## II.  DISCUSSION

### *A.  The Sharmas' Motion for Summary Judgment*

#### 1.  <u>Summary Judgment Standard</u>

The Court will grant summary judgment if the movants show that there are no genuine

issues of material fact in dispute and that they are entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56(c).  When evaluating a

summary judgment motion, the Court must view the evidence in the light most favorable to the

non-moving party, and draw all reasonable inferences in her favor.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S.  242, 255 (1986).  The party opposing a motion for summary judgment "may not

rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts

showing that there is a genuine issue for trial."  *Id.* at 248; *see also Jackson v. Finnegan,*

*Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).  Factual assertions

in the moving party's affidavits may be accepted as true unless the opposing party submits her

own conflicting affidavits or documentary evidence.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir.

1992).

#### 2.  <u>Res Judicata Challenge</u>

Generally, a plaintiff is expected to "present in one suit all the claims for relief that [s]he

may have arising out of the same transaction or occurrence."  *U.S. Indus., Inc. v. Blake Const.*

*Co., Inc.*, 765 F.2d 195, 205 (D.C. Cir. 1985) (quoting 1B J. Moore, *Moore's Federal Practice*,

¶ 0.410[1] (1983)).  The doctrine of *res judicata* provides that a final judgment on the merits in a

prior suit involving the same parties bars subsequent suits based on the same cause of action.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).  Two cases implicate the same

4

cause of action if they share the same nucleus of facts.  *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002), *cert. denied*, 537 U.S. 1193 (2003) (internal quotation marks and citation omitted).  *Res judicata* bars not only claims that actually were litigated, but also claims that could have been litigated in the previous action.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted); *I.A.M. National Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983) (noting that *res judicata* "forecloses all that which might have been litigated previously") (citation omitted); *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981).

In order for *res judicata* to apply, a defendant must show: (1) the identity of parties in both suits, (2) a judgment rendered by a court of competent jurisdiction, (3) a final judgment on the merits, and (4) an identity of the cause of action in both suits.  *Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 87 (D.D.C. 1998) (citing *Brannock Assocs., Inc. v. Capitol 801 Corp.*, 807 F. Supp. 127, 134 (D.D.C. 1992) (citing *U.S. Indus. Inc.*, 765 F.2d at 205 n.21 )).  The Sharmas argue that plaintiff's claims are barred by *res judicata* because the claims were raised or could have been raised in prior lawsuits filed against them in the Superior Court of the District of Columbia ("Superior Court").  *See* Sharma Mot. at 12-21.

### a.  Burnett v. Sharma, Civ. No. 01-5488

Defendants demonstrate that plaintiff filed a civil action, Burnett v. Sharma, Civ. No. 01-5488 ("Civ. No. 01-5488"), in the Superior Court against Amar Sharma and his counsel, the Law Office of Sharma & Bhandari, in July 2001.  Sharma Mot., Ex. A (Complaint for Declaratory Judgment, Permanent Injunctive Relief, and Damages Action Involving Real Property, Civ. No. 01-5488).  The complaint alleges that Amar Sharma discriminated against plaintiff on the basis of her race (African American) when he refused to sell or lease to her the premises at 4801 41st

Street, N.W. in 1999, in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Civil

Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, and the District of Columbia Human Rights Act,

D.C. Code § 1-2501 *et seq.  See id.* ¶¶ 17, 22-23, 44-50.   A subsequent amendment to the

complaint alleges the existence of housing code violations at the subject premises, and purports

to bring additional claims under District of Columbia law.  *Id.*, Ex. C (Motion to Amend Action

Involving Real Property).

Review of the record makes clear that the parties in Civ. No. 01-5488 and the instant

action are the same.[3]  Plaintiff names Mr. Sharma and his former counsel as defendants in both

cases.  In addition, her causes of action arose from the same nucleus of facts: Mr. Sharma's

alleged refusal to sell or lease the premises to plaintiff because of her race, and, generally, Mr.

Sharma's failure to maintain the premises in accordance with District of Columbia law and its

housing code regulations.  However, the Sharmas fail to show that the Superior Court rendered a

final judgment on the merits of Civ. No. 01-5488.

The Superior Court dismissed Civ. No. 01-5488 for want of prosecution on February 10,

2006.  Sharma Mot., Ex. B (Certificate, Case No. 2001 CA 005488 B).  According to defendants,

the dismissal was entered under Rule 41(b) of the Superior Court's civil rules, which authorizes

the dismissal of a civil action or claim for a plaintiff's failure to prosecute or to comply with

court orders or rules.  Sharma Mot. at 14.  Rule 41(b) further provides:

---

[3]      The Sharmas demonstrate that only Amar Sharma owned and controlled the
premises, and alone made all rental decisions.  Sharma Mot., Ex. F (Affidavit of Anasuya
Sharma) ¶¶ 3-6, Ex. G (Affidavit of Amit Sharma) ¶¶  3-6, Ex. H (Affidavit of Amar Sharma)
¶¶ 3-5, 10, 15, Ex. M (Quitclaim deed executed by Anasuya Sharma).  Absent a showing by
plaintiff to the contrary, the Court must grant Anasuya and Amit Sharma's motion to dismiss,
and there being no such showing, the Court will dismiss these defendants as parties to this action.

> Unless the Court in its order for dismissal otherwise specifies, a dismissal under [Rule 41(b)] and any dismissal not provided for in this Rule, other than a dismissal for lack of jurisdiction, or failure to join a party under Rule 19, <u>operates as an adjudication upon the merits</u>.

Super. Ct. Civ. R. 41(b) (emphasis added); *see Amer. Nat'l Bank & Trust Co. of Chicago v. United States*, 142 F.2d 571, 572 (D.C. Cir. 1944) (dismissal operates as decision on the merits with preclusive effect on subsequent suit). Because the dismissal did not specify otherwise, defendants argue that the dismissal of Civ. No. 01-5488 was an adjudication on the merits of all of plaintiff's claims under both federal and District of Columbia law on which all the Sharmas may rely, and, therefore, bars the instant action. Sharma Mot. at 14-15. Plaintiff counters that the dismissal of Civ. No. 01-5488 "was the same as a dismissal without prejudice" and therefore "did not have res judicata effect." Plaintiff's Opposition to Sharma Defendants['] Motion for Summary Judgment, Loewinger and Brand's Motion for Summary Judgment and Sharma Law Group's Motions to Dismiss ("Pl.'s Opp'n") at 6.[4]

Defendants' exhibit submitted as proof of the dismissal is not a certified copy of the dismissal order itself. Rather, it is a certificate reflecting the disposition of Civ. No. 01-5488, which indicates that the case was "Dismissed for Want of Prosecution on 2-10-06." Sharma Mot., Ex. B. The Certificate neither mentions Rule 41, nor indicates whether the Superior Court's dismissal was or was not without prejudice, a relevant consideration because a dismissal without prejudice is not an adjudication on the merits under District of Columbia law. *See*

---

[4]     The first three pages of plaintiff's submission are the "Opposition to Sharma Defendants['] Motion for Summary Judgment, Loewinger and Brand's Motion for Summary Judgment and Sharma Law Group's Motions to Dismiss," and the fourth page begins a "Memorandum of Points and Understanding." The two documents are numbered sequentially, and the Court therefore will refer to the documents collectively as "Pl.'s Opp'n."

*Interdonato v. Interdonato*, 521 A.2d 1124, 1131-32 n.11 (D.C. 1987).  Thus, absent a showing

that the Superior Court's dismissal was with prejudice or that the dismissal operated as an

adjudication upon the merits under Rule 41(b), summary judgment on this ground must be

denied.

b.  <u>Sharma v. Burnett</u>, Civ. No. LT51649-01

In the alternative, the Sharmas argue that the jury verdict rendered against plaintiff in a

separate case in the Superior Court's Landlord and Tenant Branch, <u>Sharma v. Burnett</u>, Civ. No.

LT51649-01 ("Civ. No. LT51649-01"), bars her discrimination claims.  Sharma Mot. at 17-18.

Plaintiff's failure to assert her discrimination claims as defenses to Mr. Sharma's action for

possession, defendants assert, operates as a *res judicata* bar to the discrimination claims raised by

plaintiff in this action.  *Id.*

In her opposition, plaintiff argues that Civ. No. LT51649-01 "was narrowly focused and

only really addressed one issue, whether Mr. Sharma had a LL/T relationship [with plaintiff]."[5]

Affidavit in Support of Plaintiff'[s] Opposition to Defendants['] Motions for Summary Judgment

and for Dismissal ("Pl.'s Aff.") ¶ 9.[6]  Plaintiff asserts that her claims exceeded the scope of a

"summary proceeding[] for possession" pursuant to the Superior Court's rules applicable to the

Landlord and Tenant Branch, and therefore could not have been pursued in Civ. No. LT51649-

01.  Pl.'s Opp'n at 7-8.  Further, she argues that she could not bring discrimination claims in the

_____

[5]     The Court presumes that plaintiff's use of "LL/T" refers to "landlord and tenant."
Ultimately, the sole question before the jury was, "Did Mr. Sharma and Ms. Burnett have an
agreement that Ms. Burnett would be Mr. Sharma's tenant?"  Sharma Mot., Ex. O (Verdict
Form).  The jury responded, "No."  *Id.*

[6]     Plaintiff has attached her affidavit to her opposition to the Sharmas' motion for
summary judgment.

Landlord and Tenant Branch because "counterclaims[,] whether based on personal injury or otherwise," are excluded. *Id.*; *see* Super. Ct. L&T R. 5(b).[7]

Although counterclaims generally are not allowed to proceed in the Landlord and Tenant Branch of the Superior Court, *see Mathis v. Barrett*, 544 A.2d 287, 289 (D.C. 1988) (affirming dismissal of counterclaim for damages based on housing code violations, constructive eviction and malicious prosecution without prejudice under Super. Ct. L&T R. 5(b)), "a defendant always has the right to present any legal defense." *Shin v. Portals Confederation Corp.*, 728 A.2d 615, 619 (D.C. 1999) (noting that tenant could have brought claims of fraudulent misrepresentation and breach of contract as defenses to landlord's claim for back rent). Thus, plaintiff's failure to bring her discrimination claims as defenses to Mr. Sharma's suit for possession bars these claims in this court. *See Redman v. Graham*, No. 04-661 (JR), 2005 WL 3211938, at *2 (D.D.C. Nov. 1, 2005) (failure to raise discrimination and Fair Housing Act claims as defenses to suit for possession in Superior Court barred the same claims in subsequent suit in federal district court), *aff'd in relevant part*, No. 05-7160, slip op. at 4 (D.C. Cir. Nov. 13, 2006); *Flynn v. 3900 Watson Place, Inc.*, 63 F. Supp. 2d 18, 25 (D.D.C. 1999) (Fair Housing Act claim in federal district court

---

[7]      With regard to counterclaims, the applicable Superior Court rule provides:

> In actions in this branch for recovery of possession of property in which the basis of recovery is nonpayment of rent or in which there is joined a claim for recovery of rent in arrears, the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises. No other counterclaims, whether based on personal injury or otherwise, may be filed in this branch. This exclusion shall be without prejudice to the prosecution of such claims in other branches of the court.

Super. Ct. L&T R. 5(b) (emphasis added).

9

precluded because claim arose from same nucleus of facts as those adjudicated in landlord and

tenant action where tenant could have raised federal claim as defense); *Barton v. District of*

*Columbia*, 817 A.2d 834, 840 (D.C. 2003), *cert. denied*, 540 U.S. 1108 (2004).  Accordingly, the

Court will grant the Sharmas' motion for summary judgment on this ground, and will dismiss

plaintiff's discrimination claims against them.[8]

### 3.   Statutes of Limitations and Plaintiff's Discrimination Claims

Even if plaintiff's discrimination claims were not barred by *res judicata*, the Sharmas

argue that plaintiff's discrimination claims are barred by the applicable statutes of limitations.

Sharma Mot. at 21-22.  A three-year statute of limitations applies to claims brought under 42

U.S.C. §§ 1981, 1982, 1983, and 1985.  *Camey v. American Univ.*, 151 F.3d 1090, 1096 (D.C.

Cir. 1998) (three-year residual statute of limitations in D.C. Code § 12- 301(8) applies to

personal injury claims and claims under 42 U.S.C. § 1983); *Banks v. Chesapeake and Potomac*

*Telephone Co.*, 802 F.2d 1416, 1421 (D.C. Cir. 1986) (applying three-year statute of limitations

to civil actions under 42 U.S.C. § 1981); *Fitzgerald v. Seamans*, 553 F.2d 220, 223 (D.C. Cir.

1977) (applying three-year statute of limitations to claims under 42 U.S.C. § 1985); *Hargraves v.*

*Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 17 (D.D.C. 2000) (applying three-year statute

of limitations for general personal injury actions under D.C. Code § 12-301(8) to actions under

42 U.S.C. §§ 1981, 1982).  With respect to claims brought under 42 U.S.C. § 1986, "no action

---

[8]      The Court's reference to "discrimination claims" refers to plaintiff's claims under
42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 (Counts I-V) and under the Fair Housing Act, 42
U.S.C. § 3601 *et seq.,* arising from the Sharmas' alleged refusal to sell or lease the subject
premises to plaintiff based on plaintiff's race.

. . . shall be sustained which is not commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986 (2006).  And a plaintiff seeking relief from an allegedly discriminatory housing practice under the Fair Housing Act must seek relief "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613 (a)(1)(A) (2006).

### a. Accrual of Plaintiff's Causes of Action

A plaintiff's cause of action ordinarily accrues at the time she suffers the alleged injury. *See, e.g., Burns v. Bell*, 409 A.2d 614, 615 (D.C. 1979) (in negligence action "where the fact of injury is readily discernible, the cause of action accrues when the injury occurs").  However, under District of Columbia law, the discovery rule applies "where the plaintiff is unaware of [her] injury at the time it occurs." *Estate of Grant v. Armour Pharm. Co.*, No. 04-1680, 2007 WL 172316, at *3 (D.D.C. Jan. 23, 2007) (citing *Burns*, 409 A.2d at 615-18).  "[F]or a cause of action to accrue where the discovery rule is applicable, one must know or by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact and (3) of some evidence of wrongdoing." *Bussineau v. President and Dir. of Georgetown College*, 518 A.2d 423, 425 (D.C. 1986).  "Once a plaintiff's cause of action accrues, the statute of limitations begins to run for all claims arising from the allegedly tortious conduct, including for injuries not yet suffered." *Estate of Grant*, 2007 WL 172316, at *3 (citing *Colbert v. Georgetown Univ.*, 641 A.2d 469, 473 (D.C. 1994) (en banc) (additional citation omitted)).

According to plaintiff, she and Mr. Sharma reached a verbal agreement for her purchase of the subject premises, and, based on this understanding, plaintiff made a written offer for the purchase of the premises.  Final Amd. Compl. ¶ 22.  Notwithstanding this purported agreement,

Mr. Sharma rejected plaintiff's subsequent request to purchase or lease the house, and proceeded

to lease the premises to a white couple.  *Id.*  Based on these events, as acknowledged by plaintiff,

she knew or should have known by October 1999, that defendants were refusing to sell or lease

the subject premises to her because of her race.  *See id.* ¶¶ 30, 32.  At that point, plaintiff had

"inquiry notice" of the discrimination claim she now is making, as she had "reason to suspect

that the defendant did some wrong, even if the full extent of the wrongdoing [was] not yet

known."  *Bradley v. Nat'l Ass'n of Sec. Dealers Dispute Resolution, Inc.*, 433 F.3d 846, 849

(D.C. Cir. 2005) (citing *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004)).

Plaintiff argues that her cause of action arose on June 28, 2001, the date on which the

District of Columbia Office of Human Rights issued a Letter of Determination on the

discrimination claim plaintiff had filed after Mr. Sharma allegedly refused to sell or rent the

subject premises to her.  Pl.'s Opp'n at 8-9; Final Amd. Compl. ¶ 29.  At that time, the Office of

Human Rights concluded that "[t]here [was] probable cause to believe that [a violation of] the

[D.C. Human Rights Act of 1997, as amended] occurred, as it pertains to housing, based on

[plaintiff's] allegations of race (Black) discrimination," stemming from Mr. Sharma's "refus[al]

to rent to [plaintiff] the house located at 4801 41st Street, NW, Washington, DC."  Compl., Ex. 1

(June 28, 2001 Letter of Determination).  Plaintiff notes that it was only after "extensive

mediation, investigation, and review" that the agency found probable cause for violations of the

District of Columbia Human Rights Act based on housing discrimination, which in its absence

plaintiff posits she "would not be able to demonstrate the 'racial animus' required by law."  *Id.* at

8-9.  Plaintiff therefore asserts that her claim, filed in 2003, "is clearly within the statute of

limitations [and] is timely."  *Id.* at 9.

Although under the discovery rule a plaintiff is expected to have "some evidence" of the defendant's wrongdoing, *see Bussineau*, 518 A.2d at 435, that evidence, for example, need not have been a final determination of probable cause from the District of Columbia Office of Human Rights.  At most, the Letter of Determination corroborated plaintiff's own suspicion: that Mr. Sharma refused to lease or sell the subject premises to her because of her race.  "The discovery rule does not [] give the plaintiff carte blanche to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm."  *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 661 (D.C. 1997); *see Brown v. Nat'l Academy of Sciences*, 844 A.2d 1113, 1119 (D.C. 2004) (affirming grant of summary judgment for defendant where former employee "testified to her own immediate conclusion that her termination was discriminatory and retaliatory," yet filed her claim after the applicable statute of limitations expired).

Insofar as plaintiff argues that the statute of limitations is tolled while a complaint is pending before the Office of Human Rights, *see* D.C. Code § 2-1403.16(a), the argument is neither relevant nor meritorious.  Plaintiff has not brought claims under the District of Columbia Human Rights Act, *see* Final Amd. Compl. ¶ 1, and even if she had, the filing of her original complaint in this action occurred more than two years after the Sharmas' alleged discriminatory acts.  *See* D.C. Code § 2-1403.16(a) (claims under District of Columbia Human Rights Act must be brought "within one year of the unlawful discriminatory act," or "within 2 years of the unlawful discriminatory act, or the discovery thereof, for complaints of unlawful discrimination in real estate transactions brought pursuant to . . . the FHA").

b.  Tolling of the Statutes of Limitations

Plaintiff argues that "[e]ven if one presumes that the statute period had run out," the

statutes of limitations should be tolled due to her "medical illness, heavy medication, and overall

situation."  Pl.'s Opp'n at 9.  She further contends that the purported discriminatory conduct by

the defendants merits application of the equitable tolling doctrine.  *Id.*

"The court's equitable power to toll the statute of limitations will be exercised only in

extraordinary and carefully circumscribed circumstances."  *Smith-Haynie v. District of

Columbia*, 155 F.3d 575, 579-80 (D.C. Cir. 1998) (quoting *Mondy v. Sec'y of the Army*, 845 F.2d

1051, 1057 (D.C. Cir. 1988)).  Equitable tolling "merely ensures that the plaintiff is not, by dint

of circumstances beyond [her] control, deprived of a 'reasonable time' in which to file suit."

*Chung v. United States Dep't of Justice*, 333 F.3d 273, 279 (D.C. Cir. 2003) (citation omitted);

*see also Norman v. United States*, 467 F.3d 773, 777-78 (D.C. Cir. 2006) (discussing plaintiff's

failure to meet the due diligence requirement for equitable tolling).  It is plaintiff's burden to

show "the existence of evidence sufficient to permit a reasonable conclusion that the statute of

limitations should have been equitably tolled."  *Smith-Haynie*, 155 F.3d at 579.  Here, plaintiff

argues that equitable tolling should apply because she "belongs to a protected class" due to a

permanent injury she sustained, and that congressional will to provide enhanced protection to

tenants in the District of Columbia would be frustrated if the doctrine is not invoked in this case.

Pl.'s Opp'n at 9.

Under District of Columbia law, "when a person entitled to maintain an action is, at the

time the right of action accrues . . . non compos mentis, [s]he . . . may bring [the] action within

the time limited after the disability is removed." D.C. Code § 12-302(a).[9]  "A person is mentally

unsound for purposes of tolling civil statute of limitations when the 'disability is of such a nature

as to show [that a plaintiff] is unable to manage [her] business affairs or estate, or to comprehend

[her] legal rights or liabilities.'"  *McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 (D.C. 1998)

(quoting *Speiser v. United States Dep't of Health & Human Servs.*, 670 F. Supp. 380, 384

(D.D.C. 1986), *aff'd*, 818 F.2d 95 (D.C. Cir. 1987)).  Thus, the fact that plaintiff took prescribed

medication alone is not a sufficient justification for tolling the statutes of limitations.  *See*

*Jackson v. Library of Congress*, Civ. No. 05-1705, 2006 WL 1722325, at *5 (D.D.C. June 21,

2006) (prolonged use of prescribed medication "does not amount to an extraordinary

circumstance to justify a delay of nearly 20 years" in pursuing employment discrimination

claim).  Plaintiff neither states a medical diagnosis, articulates the nature of her purported

disability, establishes that the disability existed at the time her causes of action accrued, nor

shows that she was unable to understand her legal rights at that time.

Plaintiff also asserts that "the repeated, vindictive, continuous and ongoing discriminatory

behavior of the Sharma Defendants [and their counsel] towards [her] would justify the tolling of

the statute given that [plaintiff] belongs to a protected class who has suffered permanent injury."

Pl.'s Opp'n at 9.  While the purported ongoing nature of defendants' actions is probative of when

plaintiff's causes of action accrued, it has no bearing on the tolling of a statute of limitations.

Accordingly, neither her membership in a "protected class" nor her alleged, yet unspecified

---

[9]      "Non compos mentis" is a Latin phrase meaning "not master of one's mind."
Black's Law Dictionary 1078 (8th ed. 2004).  Generally, the phrase is applied to a person "who is
not capable of handling his own personal affairs or who cannot function in society."  *Oparaugo
v. Watts*, 884 A.2d 63, 73 (D.C. 2005) (citation omitted).

"permanent injury," presents an extraordinary circumstance to warrant the equitable tolling of the statutes of limitations.  Plaintiff's claims therefore are barred, as the Court's docket reveals that plaintiff submitted her original civil complaint and application to proceed *in forma pauperis* on October 24, 2003, long after the applicable statutes of limitations had expired.[10]

### 4. Malicious Prosecution Claim

"[I]n order to support an action for malicious prosecution in the District of Columbia, a plaintiff must plead and be able to prove: 1) that the underlying suit terminated in plaintiff's favor; 2) malice on the part of the defendant; 3) lack of probable cause for the underlying suit; and 4) *special injury* occasioned by plaintiff as the result of the original action."  *Joeckel v. Disabled American Veterans*, 793 A.2d 1279, 1282 (D.C. 2002) (affirming dismissal of malicious prosecution claim for plaintiff's failure to show special injury) (emphasis added); *Ammerman v. Newman*, 384 A.2d 637, 639 (D.C. 1978) (per curiam).  A "special injury" has been defined as an arrest, seizure of property, or "injury which would not necessarily result from suits to recover for like causes of action."  *Mazanderan v. McGranery*, 490 A.2d 180, 182 (D.C. 1984) (quoting *Ammerman*, 384 A.2d at 639).  In the District of Columbia, injuries to reputation, emotional distress, loss of income, and "substantial expense in defending" oneself against legal action have all been held to fall outside the scope of the definition of special injury. *Mazanderan*, 490 A.2d. at 182.

Plaintiff alleges that the Sharmas "filed approximately seven cases against the plaintiff, [and that their] endless filings against the plaintiff and the subsequent losses on the part of the

---

[10]    It is the practice of the Clerk of Court to stamp each *pro se* complaint and accompanying application to proceed *in forma pauperis* on the date of receipt.  In this case, plaintiff's original complaint [#1] is stamped "received" on October 24, 2003.

owner is [sic] a clear example of malicious prosecution for which the owner should be held liable." Final Amd. Compl. ¶ 90.  The Sharmas argue that the ultimate success of their eviction actions bar plaintiff's malicious prosecution claim.  Sharma Mot. at 22.

Although plaintiff adequately may have alleged the elements of a malicious prosecution claim, she cannot survive the Sharmas' summary judgment motion for the following reasons. She has failed to show that the underlying action for possession was resolved in her favor; she has not proffered any evidence of defendants' malice; and she has failed to establish the absence of probable cause for the underlying suit for possession filed against her in the Superior Court. Accordingly, summary judgment must be awarded to defendants on plaintiff's malicious prosecution claim.

### B.  Motions to Dismiss

### 1.  Dismissal Under Rule 12(b)(6)

A complaint should not be dismissed for failure to state a claim unless the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The ruling on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Therefore, the factual allegations of the complaint must be presumed to be true and liberally construed in plaintiff's favor.  *See, e.g., United States v. Phillip Morris, Inc.,* 116 F. Supp. 2d 131, 135 (D.D.C. 2001).  The Court, however, is not obligated to draw an inference that is not supported by the facts presented.  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

2.  Loewinger & Brand, PLLC's Motion to Dismiss

Among the defendants to this action are the Sharma Law Group (formerly known as

Sharma & Bhandari) and Loewinger & Brand, PLLC.  Both law firms had represented Mr.

Sharma in his efforts in the Superior Court to evict plaintiff from the subject premises.  *See, e.g.,*

Final Amd. Compl. ¶ 29.

a.  Plaintiff's Discrimination Claim

Generally, plaintiff alleges that the two law firms "intentionally discriminated against the

plaintiff on the basis of her race, African American."  Final Amd. Compl. ¶ 30.  Loewinger &

Brand, PLLC moves to dismiss this claim because "plaintiff provides no allegations upon which

this claim could rest."  Memorandum of Points and Authorities in Support of Defendant

Loewinger & Brand, PLLC Motion to Dismiss at 4.  Notwithstanding the absence of specific

supporting factual allegations, the pleading makes as a short and plain statement of plaintiff's

claim of discrimination.  *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir.

2000) (complaint need not allege elements of *prima facie* case of employment discrimination).

Along with her statement of this Court's jurisdiction and her demands for relief, plaintiff satisfies

the simple notice requirements of Rule 8(a) of the Federal Rules of Civil Procedure.  Plaintiff

therefore adequately states a claim of discrimination against both firms, and Loewinger &

Brand's motion to dismiss on this ground will be denied.

b.  Plaintiff's Defamation Claim and the Judicial Proceedings Privilege

Certain allegations made by plaintiff refer to statements made in connection with

proceedings before the Landlord and Tenant Branch of the Superior Court and presumably assert

claims of defamation.  For example, plaintiff alleges that Loewinger & Brand, PLLC "appeared

to file a fraudulent motion . . . alleging that plaintiff had not paid her rent into the Court

Registry." Final Amd. Compl. ¶ 35.  Both firms allegedly "represented false information about

plaintiff to Court and local officials in a racially motivated effort to discredit, embarrass, and

damage the plaintiff, " *id.* ¶ 36, committed perjury, *id.* ¶ 39, and otherwise misrepresented facts

to the Superior Court, *id.*  However, these claims are barred by the judicial proceedings

privilege.

"[T]he District of Columbia has long recognized an absolute privilege for statements

made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear

some relation to the proceeding." *Finkelstein, Thompson & Loughran v. Hemispherx

Biopharma, Inc.*, 774 A.2d 332, 338 (D.C. 2001) (affirming dismissal of defamation claim

against lawyer for statements made out of court and prior to litigation).  This "judicial

proceedings privilege" is intended "to free honorable lawyers to render candid and zealous advice

and representation to their clients without fear of retaliatory harassment from their adversaries."

*Id.* (citation omitted).  "For the absolute immunity of the privilege to apply, two requirements

must be satisfied: (1) the statement must have been made in the course of or preliminary to a

judicial proceeding; and (2) the statement must be related in some way to the underlying

proceeding." *Arneja v. Gildar*, 541 A.2d 621, 623 (D.C. 1988).  All of the statements asserted by

plaintiff as defamatory were made in the course of or preliminary to eviction proceedings in the

Superior Court, and were related to the Sharmas' actions to regain possession of the subject

premises.  The Court therefore must grant the law firms' motions to dismiss these defamation

claims.

3.  Sharma Law Group's Motion to Dismiss

Sharma Law Group ("SLG") appears to argue that *res judicata* bars all claims against it because the claims have been adjudicated fully in the District of Columbia courts.[11]  *See* Memorandum of Points and Authorities in Support of Defendant Sharma Law Group's (formerly Sharma & Bhandari) Motion to Dismiss ("SLG Mot.") at 1-2 (page numbers as designated by the Court).  To the extent that SLG relies on the dismissal of Civ. No. 01-5488 for lack of prosecution, the motion must be denied for the same reason that the Sharmas' motion on this ground was denied, *i.e.*, it is not clear on this record that the dismissal of Civ. No. 01-5488 was a final adjudication on the merits of those claims.

To the extent SLG argues that the Superior Court's decisions in Mr. Sharma's multiple filings in the Landlord and Tenant Branch are final, SLG is correct.  And this Court has no authority to review the final judgments of the District of Columbia courts.[12]  *See Fleming v. United States*, 847 F. Supp. 170, 172 (D.D.C. 1994) (applying *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983)), *aff'd*, No. 94-5079, 1994 WL 474995 (D.C. Cir.

---

[11]     SLG does not address plaintiff's discrimination claim in its dismissal motion. However, its request to dismiss plaintiff's claims stemming from "statements made by the Sharma Law Group" in the performance of its duties as Mr. Sharma's legal representative, *see* SLG Mot. at 2, will be granted for the reasons set forth above.

[12]     The Court will dismiss plaintiff's claims to the extent they allege misconduct by the two law firms before the Superior Court and indicate plaintiff's dissatisfaction with the Superior Court proceedings.  The fact that these firms represented Mr. Sharma, *see* Final Amd. Compl. ¶ 29, is not a cognizable cause of action.  Nor does the disappearance of witnesses whose names were provided to Loewinger & Brand, *id.* ¶ 26, nor the firm's alleged refusal "to postpone hearings and/or trials and/or even to permit the plaintiff additional time to respond to motions and filings and prepare for trial to permit her to better understand the legal documents and proceedings given her disability and medical condition," *id.* ¶ 32, state claims upon which relief can be granted.  Nor is plaintiff's allegation that an associate sent her a copy of a motion that was not filed in the Superior Court, *id.* ¶ 39, actionable.

July 27, 1994), *cert. denied*, 513 U.S.1150 (1995).  However, the finality of the decisions

rendered by the District of Columbia courts does not establish a *res judicata* bar to plaintiff's

claims against SLG in this case.

4.  <u>Jennifer Renton's Motion to Dismiss</u>

Ms. Renton asserts that she "was never served, and never saw, the original Complaint in

Case No: 03-2365."  Memorandum of Points and Authorities in Support of Defendant Jennifer

A. Renton's Motion to Dismiss the Plaintiff's Complaint for Lack of Jurisdiction ("Renton

Mot.") ¶ 1.  However, review of the record shows that Ms. Renton was served a copy of

plaintiff's Second Amended Complaint on or about May 20, 2006.  Notice and Acknowledgment

of Receipt of Summons and Complaint by Mail [Dkt. #59].  And, the amended pleading

superceded plaintiff's original complaint and First Amended Complaint.  *See Washer v. Bullitt

County*, 110 U.S. 558, 562 (1884) ("When a petition is amended by leave of the court, the cause

proceeds on the amended petition."); *Nat'l City Mortgage Co. v. Navarro*, 220 F.R.D. 102, 106

(D.D.C. 2004) (declaring amended complaint the operative complaint as it supersedes original

complaint).  Thus, improper service of the original complaint, where defendant does not

challenge service of the operative pleading, is not a ground for dismissal, and Ms. Renton's

motion will be denied.

Ms. Renton has not filed an answer or other response to the Final Amended Complaint

and requests "an extension of time to respond to any further Complaints."  Renton Mot. at 8.

This motion will be granted.

21

An Order consistent with this Memorandum Opinion will be issued separately.

_____/s/_____
REGGIE B. WALTON
United States District Judge

Date:  March 30, 2007